UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:09-CR-31 |
| | ) | JUDGE JORDAN |
| MARTINA YEARY | ) | |

PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Martina Yeary, and the defendant's attorney, J. Matthew Bolton have agreed upon the following:

1. The defendant will plead guilty to the following count in the indictment:

a) Count 1, that is, conspiracy to distribute and to possess with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).

The punishment for this offense is as follows: The maximum penalty to which the defendant will be exposed by virtue of the guilty plea is a term of imprisonment of a minimum mandatory ten years and not more than life, a fine of $4,000,000.00, a term of supervised release of at least five years to life, and a mandatory assessment of $100.00.

b) In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the remaining counts against the defendant in this indictment.

2. The parties agree that the appropriate disposition of this case would be the following as to each count:

a) The Court may impose any lawful term of imprisonment up to the statutory maximum;

b) The Court may impose any lawful fine up to the statutory maximum;

c) The Court may impose any lawful term of supervised release up to the statutory maximum;

d) The Court will impose a special assessment fee as required by law; and

e) The Court may order forfeiture as applicable and restitution as appropriate.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime charged. The defendant is pleading guilty because the defendant is, in fact, guilty.

(a) In order to be guilty of the offense in Count 1, the defendant agrees that each of the following elements of the crime must be proven beyond a reasonable doubt: The defendant (1) did combine, conspire, confederate and agree with at least one other person to distribute or possess with the intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance on or about the dates charged in the Eastern District of Tennessee and elsewhere, (2) the defendant knowingly, intentionally and without authority joined the conspiracy to distribute or possess with the intent to distribute cocaine base ("crack"), and (3) the defendant intended to further the conspiracy to distribute or possess with the intent to distribute cocaine base ("crack").

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a) Through the testimony of several witnesses, to include co-conspirators, the United States would demonstrate, beyond a reasonable doubt, that from approximately the month of February 2006, and continuing to on or about April 14, 2009, the defendant did knowingly, intentionally, and without authority, conspire with at least one other person to distribute and possess with the intent to distribute at least 500 grams but not more than 1.5 kilograms of a mixture or substance containing a detectible amount of cocaine base ("crack"), a Schedule II controlled substance.

b) In furtherance of the conspiracy, the defendant received cocaine base ("crack") and cocaine from several different co-conspirators and distributed these drugs in the Eastern District of Tennessee. During the period of the conspiracy, the defendant also maintained and operated a residence at 1408 Shannon's Little Mountain Road. The defendant distributed drugs from this residence and allowed other co-defendants to store, cook and distribute cocaine and cocaine base ("crack") from her residence.

c) On or about August 9, 2007, a confidential informant made numerous recorded telephone calls to Alexis Desmond Terrell aka Will aka Big Un, hereinafter Terrell, to arrange the purchase of one ounce of cocaine base ("crack"). The informant met Terrell at

the residence of the defendant, 1408 Shannon's Little Mountain Road in Morristown, Tennessee. The cocaine base ("crack") was on the kitchen table when the informant arrived at the defendant's residence. The defendant handed the informant a baggie to put the cocaine base ("crack") into and the informant then handed the money for the cocaine base ("crack") to Terrell. Laboratory tests confirm that the substance was cocaine base ("crack") and weighed 22.3 grams.

d) On or about August 21, 2007, a confidential informant made a recorded call to Terrell to purchase three ounces of cocaine base ("crack"). The informant and Terrell agreed to meet at 2016 E. Outer Drive in Morristown, Tennessee. The informant waited while Terrell cooked the cocaine into cocaine base ("crack"). The defendant brought a quantity of money, which represented cash from previous drug sales, and handed it to Terrell. After the cocaine base ("crack") was dry, Terrell weighed it and sold three ounces to the informant for $2,550.00. The defendant and co-defendant Anthony Bryan aka Ant assisted Terrell in the drug transaction. Laboratory results confirm that the substance was cocaine base ("crack") and weighed 83.7 grams.

e) On or about July 11, 2008, a confidential informant made numerous recorded telephone calls to co-defendant Andrew Montgomery to arrange a three ounce purchase of cocaine base ("crack"). Montgomery directed the defendant to deliver the three ounces of cocaine base ("crack") to the informant and collect the money. The defendant met the informant at a location in Morristown, Tennessee and hand delivered 66.2 grams of cocaine base ("crack") to the informant. The informant paid the defendant approximately $2,475.00 for the drugs.

f) On or about August 26, 2008, a confidential informant made numerous recorded telephone calls to Montgomery to arrange a three and one-half ounce cocaine base ("crack") transaction. Montgomery instructed the informant to go to the defendant's residence at 1408 Shannon's Little Mountain Road in Morristown, Tennessee to pick up the three and one-half ounces of cocaine base ("crack"). Upon receiving directions from Montgomery, the defendant sold the informant the cocaine base ("crack") for $3,000.00. Laboratory results confirm that the substance was cocaine base ("crack") and weighed 79.4 grams.

g) On or about September 6, 2008, a confidential informant made numerous recorded telephone calls to Montgomery to arrange the purchase of three ounces of cocaine base ("crack") and one ounce of cocaine. Montgomery directed the defendant and co-defendant Malcolm Bryan to deliver the drugs and collect the money from the informant. The defendant and Bryan met the informant at a location in Morristown, Tennessee. Both the defendant and Bryan then sold the informant 41.8 grams of cocaine base ("crack") and 27.2 grams of cocaine.

h) On or about September 25, 2008, a confidential informant and co-defendant Randy Brockwell engaged in several recorded telephone calls arranging the purchase of one ounce of cocaine. Brockwell met the informant and drove the informant to the residence of the defendant at 1408 Shannon's Little Mountain Road in Morristown, Tennessee. The defendant, Brockwell and the informant then drove to another location in Morristown. The defendant went inside an apartment and returned with a quantity of a substance which the defendant and Brockwell represented was cocaine to the informant.. The informant then paid

the defendant and Brockwell. The substance was sent to the lab and tested negative for any controlled substance.

i) During the period of the conspiracy, a confidential informant reports that he picked up approximately $7,500.00 in cash directly from the defendant which represented the proceeds from sales of cocaine base ("crack") and delivered said money to Montgomery. This amount of cash represented the sale of approximately nine ounces of cocaine base ("crack").

5. The defendant understands that by pleading guilty the defendant is giving up several rights, including:

a) the right to plead not guilty;

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6. The defendant further agrees to cooperate completely and truthfully with any and all law enforcement agents and personnel of the United States Attorney's Office.

This cooperation includes, but is not limited to, meeting with and being interviewed by such law enforcement agents or personnel of the United States Attorney's Office whenever requested. The defendant further agrees not to protect anyone who was truly involved and not to falsely implicate anyone who was not truly involved in the commission of criminal offenses. The defendant further agrees to testify completely and truthfully before a federal grand jury, at any trial, or at any other proceeding if called upon by the United States to do so. Upon request by the United States, the defendant must furnish all documents, objects and other evidence in the defendant's possession, custody or control that are relevant to the United State's inquiries. The defendant and defense counsel also knowingly, voluntarily, and intentionally waive the defendant's right (where applicable) to have defense counsel present during the course of cooperation, including questioning or court appearances.

7. To ensure the defendant's truthful cooperation, the United States agrees, except as provided below, not to use any self-incriminating information provided by the defendant pursuant to this written plea agreement against the defendant. However, nothing in this plea agreement shall be applied to restrict the use of any information, (1) known to the United States prior to entering into this written plea agreement; (2) obtained from any other source; or (3) concerning the defendant's prior criminal record. Should any of the following occur (1) the defendant provides false or materially misleading information during the course of the defendant's cooperation; or (2) later moves to withdraw the defendant's guilty plea, then the United States may make use of any information provided by the defendant for any purpose in any subsequent proceeding, including grand jury, trial and sentencing phases of this case or in any other prosecutions or proceedings against the defendant.

8. At the time of sentencing, the United States may bring to the Court's attention the nature, extent, and value of the defendant's cooperation so that it may be considered in determining a fair and appropriate sentence under the facts of the case.

9. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant 's offense level is 16 or greater, the United States agrees to move, at or before the time of sentencing, that the Court decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. The defendant agrees that the decision to file this motion is within the sole discretion of the United States. Should the defendant engage in any conduct or make statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of additional offenses prior to sentencing, the United States will be free not to make such motion or to withdraw such motion if already made, and will be free to recommend to the Court that the defendant not receive any offense level reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

10. The defendant agrees to pay the special assessment in this case prior to sentencing.

11. No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding the potential sentence in this case are not binding on the Court. The defendant understands that the sentence in this

case will be determined by the Court after it receives the pre-sentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

12. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that were used and intended to be used in any manner or part to commit and to facilitate the commission of a violation of Title 21, United States Code, Section 846 and/or 841(a)(1), and/or any and all assets and property, or portions thereof, subject to forfeiture as proceeds of the defendant's criminal activities which are in the possession or control of the defendant or the defendant's nominees. The defendant further agrees to assist the United States fully in the identification, recovery and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or

criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

13. The defendant agrees to pay any fine and/or restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect the fine and/or restitution obligation by set-off of program payments, execution on non-exempt property, and any other means the United States deems appropriate. Finally, the defendant and counsel agree that the defendant may be contacted regarding the collection of any fine and/or restitution without notifying counsel and outside the presence of counsel.

14. (a) In consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense committed, the defendant agrees not to file a direct appeal of the defendant's conviction or sentence except the defendant retains the right to appeal a sentence imposed above the sentencing guideline range as determined by the district court.

(b) In addition, the defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction and/or resulting sentence. The parties agree that the defendant retains

the right to raise, by way of collateral review under § 2255, claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment.

15. This agreement becomes effective once it is signed by the parties. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement, moves to withdraw the defendant's guilty plea, or violates any court order or any local, state or federal law pending the resolution of this case, then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or statutory speedy trial defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

16. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the

parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

James R. Dedrick
United States Attorney

9-21-09
Date

By: Donald Wayne Taylor
Assistant United States Attorney

9-17-09
Date

Martina Yeary
Defendant

9-17-09
Date

J. Matthew Bolton
Attorney for Defendant